

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-995

| | |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><br>APPELLANT<br><br>V.<br><br>SHANELL VEASLEY AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered: MARCH 16, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-15-1164]<br><br>HONORABLE PATRICIA JAMES, JUDGE<br><br>REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

This is a dependency-neglect case. It was initiated when appellant Arkansas Department of Human Services (DHS) filed a petition for emergency custody of appellee Shanell Veasley's three minor children. The trial court entered an ex parte order for emergency custody, and later entered a probable-cause order. However, on the day after the probable-cause order was filed, the trial court sua sponte entered an order dismissing the petition and closing the file. It is from this order closing the file that DHS now appeals.

For reversal of the trial court's order, DHS raises the following three arguments: (1) the trial court lacked the authority to dismiss the petition absent an appropriate motion pending before the court; (2) the trial court improperly deprived DHS of its right to be heard on the petition and failed to properly address the material issues of fact in dispute before closing the case; and (3) the trial court improperly closed the case because DHS is specifically authorized to place foster children in provisional foster homes during pending

SLIP OPINION

dependency-neglect proceedings. We agree that the trial court erred in entering the order closing the dependency-neglect case, and we remand for further proceedings.

The record reflects that DHS took an emergency hold of Shanell's children on September 2, 2015, based on allegations of neglect and parental unfitness resulting from Shanell's illegal-drug use. The following day, on September 3, 2015, DHS made a provisional placement of the children with Sheurika and Mikhael McKeever, relatives of the children. On September 4, 2015, DHS filed a petition for emergency custody and dependency-neglect. Attached to the petition was an affidavit of a family-service worker stating that Shanell had recently given birth to her youngest child and that the infant's meconium had tested positive for THC and opiates. The affidavit further stated that Shanell had a history of cocaine, PCP, and THC use and that she was on probation and attending drug court as a result of a drug conviction. Shanell was drug tested with positive results for marijuana, oxycodone, and benzodiazepines. Shanell admitted smoking marijuana and taking benzodiazepines during her pregnancy. David Porch, the father of the two younger children and with whom Shanell lived, tested positive for opiates, oxycodone, and marijuana. The family-service worker's affidavit concluded:

> The mother has subjected [her youngest child] to neglect as evidenced by her meconium drug screen. The mother is currently unfit to parent her children. The mother continued to use drugs even during pregnancy and during the pendency of her drug court case. The mother reports that she has postpartum depression and is not taking her depression medication. The mother is often emotionally distraught, sitting around and crying continuously. The mother admitted to buying illegal drugs and chose to engage in drug activity while pregnant. The mother has a history of drug use and even admitted to being high in the presence of the children. The juveniles' health and safety are in danger due to concerns relating to the above.

Later, on September 4, 2015, the trial court entered an ex parte order for emergency custody, finding that there was probable cause that the juveniles were dependent-neglected, that it was contrary to the welfare of the juveniles to remain with their mother, and placing the children in DHS custody.

A probable-cause hearing was held on September 14, 2015. On the day of the hearing, Shanell tested positive for THC, cocaine, and benzodiazepines. The parties stipulated at the hearing that probable cause existed at the time of the emergency DHS hold and continued to exist due to Shanell's drug use. The trial court accepted the parties' stipulation of probable cause, and the following exchange occurred between the trial court and counsel for DHS:

DHS COUNSEL: Right before the children were called up I was informed that the children were placed in a provisional placement and I wanted to let the court know because I know what the court's policy is. They were placed on September 3rd with a relative with the last name M who started the process—

TRIAL COURT: Why did you file a petition if the children were placed somewhere?

DHS COUNSEL: They were placed the same—

TRIAL COURT: This was filed the 4th.

DHS COUNSEL: The order was signed the 4th, the 72-hour hold was taken the 2nd, and the children were placed with the provisional the day after the 72-hour hold.

TRIAL COURT: *I sign these the day you submit them, so why would you even submit this to me if you all had a placement for the children?*

DHS COUNSEL: I can't answer that question. I know once the hold is taken the affidavit doesn't necessarily come to the legal person assigned to review it immediately.

TRIAL COURT: At the next hearing I want whoever these provisional people are to be here. I have no idea of anything about these people. I don't want to mess up. I can't show up on time barely prepared in any of your cases. They need to be here

3

at the next hearing. And from here on out we will be addressing this, it shouldn't become an issue. *I don't understand why I have a need for a dependency-neglect case when you all have already placed these children somewhere else.* Why are they in danger? (Emphasis added.)

At the conclusion of the hearing, the trial court entered a probable-cause order finding that probable cause continued to exist to protect the juveniles. The trial court found that it was contrary to the welfare of the minors to be returned to Shanell's custody and that placement with DHS was in the children's best interest and was necessary for the protection of their health and safety. The trial court ordered both Shanell and David to submit to random drug screens, submit to a drug-and-alcohol assessment, undergo a psychological evaluation, and take parenting classes. The trial court ordered the adults with whom the children were provisionally placed to appear at the next hearing or DHS would be held in contempt. The probable-cause order further directed that there be no placement with relatives or fictive kin unless ordered by the court. The trial court set the adjudication hearing for October 19, 2015.

The day after the trial court entered the probable-cause order, without any motion being filed, the trial court entered an "order reconsidering and vacating the probable cause order, denying petition for ex parte emergency custody and dependency neglect, and closing file." That order recites:

1. The Court held a probable cause hearing in this matter on September 14, 2015. At the end of the hearing, after the Court issued its ruling, the Court learned that the children were placed in the provisional care of Sheurika and Mikhael McKeever on September 2 or 3, 2015.

2. The emergency hold was taken on September 2, 2015. The Petition for Ex Parte Emergency Custody and Dependency Neglect was filed on September 4, 2015, and signed by the Court the same day.

3. *The affidavit in support of the Department's Petition failed to state that the children had already been placed in a provisional home.*

4.  *Had the Court been aware of this information at the time the Petition was presented, the Court would have denied the Petition and dismissed the case then.* With DHS making a provisional placement prior to the Petition being filed, this case basically became a "less than custody" matter, which this Court does not sign based on other, better alternatives being more readily available. However, as stated earlier, that material fact was omitted from the affidavit, and it did not come up in Court until the hearing was virtually completed.

5.  The Court hereby reconsiders and vacates its Probable Cause order and DENIES the Department's Petition for Ex Parte Emergency Custody and Dependency-Neglect. The allegations in the affidavit are of a serious nature; however, it appears that the McKeevers are fully capable of protecting the children from further harm without order of this Court.

6.  By placing the children with the McKeevers prior to even filing its Petition in this matter, DHS is representing that the McKeevers are safe, appropriate placements for the children, and that the McKeevers will act in the children's best interests and protect their safety, health, and well-being. *DHS is welcome to assist the McKeevers with obtaining temporary or emergency guardianship of the children through probate court filing.*

7.  *If DHS has any reason to believe that Mr. and Mrs. McKeever have not, or will not, act appropriately to ensure the safety of the children, an emergency hold should then be exercised based on DHS placing the children in an unsafe home.* As that does not appear to be the case at this time, however, the Court sees no proof that the children would be in immediate danger or imminent harm if this Court vacates its prior orders.

8.  *Further, Mother is already receiving, or is ordered to receive, appropriate services through her drug court case. Having an additional open dependency-neglect case will cause needless confusion and possible duplication of services. The Court also finds that the children's best interests do not require keeping open a dependent-neglect case, in light of the Department's pre-Petition provisional placement of them with the McKeevers.*

9.  The Department is advised that in the future, all supporting affidavits presented to this Court requesting Ex Parte Emergency Custody shall contain indication of where each child is currently placed (licensed foster home, shelter, residential treatment facility, etc.) If a provisional placement has already been made, the affidavit shall so state, along with the full name of the person having provisional placement of the juvenile. This Court will decline to sign any Orders for Emergency Custody that does not have this information in its affidavit supporting the Petition, and will take this information into account in determining reasonable efforts.

10.  Based on the foregoing findings, the Court hereby VACATES its Probable Cause Order from September 14, 2015, and DENIES the Petition for Ex Parte Emergency Custody and Dependency-Neglect. This file is CLOSED. (Emphasis added.)

DHS subsequently filed a motion for reconsideration, which the trial court denied.  DHS timely appealed from the September 15, 2015 order that closed the dependency-neglect case.

On appeal, DHS argues that the trial court lacked the authority to dismiss the petition absent an appropriate motion pending before the court.  In support of this argument, DHS cites *Matsukis v. Joy*, 2010 Ark. 403, 377 S.W.3d 245, where the supreme court held that it was reversible error for a trial court to dismiss a case without an appropriate pending motion.  DHS further contends that it was improperly denied the right to be heard prior to dismissal of the case and that material facts remained to be decided on the issue of whether the children should be adjudicated dependent-neglected because of a substantial risk of serious harm.  Finally, DHS asserts that the trial court improperly closed the case because DHS is specifically authorized by statute to place children in provisional foster homes pending dependency-neglect proceedings.  We agree that the trial court erred in dismissing the case.

The Arkansas Juvenile Code provides that a juvenile may be taken into custody by a designated person under the provisions of section 12-18-1001 et seq.  *See* Ark. Code Ann. § 9-27-313(a)(1)(C) (Repl. 2015).  Arkansas Code Annotated section 12-18-1001(a)(3) (Supp. 2015) provides that a designated DHS employee may take a child into custody, without the consent of the parent, if circumstances or conditions of the child are such that continuing in the care and custody of the parent presents an immediate danger to the health or physical well-being of the child.[1]  After DHS removes a juvenile, the juvenile shall be

---

[1] Such emergency custody may not exceed 72 hours, unless the expiration of 72 hours falls on a weekend or holiday.  *See* Ark. Code Ann. § 12-18-1001(b) (Supp. 2015).

SLIP OPINION

placed in a licensed or approved foster home, shelter, or facility, or an exempt child–welfare agency. Ark. Code Ann. § 9-28-108(b)(1)(A). Arkansas Code Annotated section 9-28-108(c)(1) provides that a relative of the juvenile placed in DHS custody shall be given preferential consideration for placement if the relative meets all the required child-protection standards and it is in the best interest of the juvenile to be placed with the relative.

In any case where there is probable cause to believe that immediate emergency custody is necessary to protect the health or physical well-being of the juvenile from immediate danger, the trial court shall issue an ex parte order for emergency custody to remove the juvenile from the custody of the parent, and shall determine the appropriate plan for placement of the juvenile. Ark. Code Ann. § 9-27-314(a)(1). Arkansas Code Annotated section 9-27-315 provides, in pertinent part:

> (a)(1)(A) Following the issuance of an emergency order, the circuit court shall hold a probable cause hearing within five (5) business days of the issuance of the ex parte order to determine if probable cause to issue the emergency order continues to exist.
>   (B)(i) The hearing shall be limited to the purpose of determining whether probable cause existed to protect the juvenile and to determine whether probable cause still exists to protect the juvenile.
>   (ii) However, the issues as to custody and delivery of services may be considered by the court and appropriate orders for that entered by the court.
> (2)(A) All other issues, with the exception of custody and services, shall be reserved for hearing by the court at the adjudication hearing, which shall be a separate hearing conducted subsequent to the probable cause hearing.
>   (B) By agreement of the parties and with the court's approval, the adjudication hearing may be conducted at any time after the probable cause hearing, subject to § 9-27-327(a)(2).
> (b) The petitioner shall have the burden of proof by a preponderance of evidence that probable cause exists for continuation of the emergency order.

Arkansas Code Annotated section 9-27-327(a)(1)(A) provides that an adjudication hearing shall be held to determine whether the allegations in a petition are substantiated by the proof.

SLIP OPINION

In the present case, Shanell had a drug problem and was using illegal drugs while pregnant with her youngest child. In accordance with our statutes, DHS took an emergency hold of Shanell's children due to the immediate danger to the children's health and well-being, and DHS temporarily placed the children with relatives in a provisional foster home. The trial court subsequently entered an ex parte emergency-custody order, followed by a probable-cause order, which were necessary for the protection of the juveniles under the provisions of the Arkansas Juvenile Code. However, after scheduling the adjudication hearing on the issue of dependency-neglect, the trial court sua sponte, and without notice to the parties, entered the order vacating its prior orders and closing the file. We hold that this was error.

A dependent-neglected juvenile is any juvenile who is at substantial risk of serious harm as a result of certain acts or omissions, including neglect or parental unfitness, to the juvenile, a sibling, or another juvenile. Ark. Code Ann. § 9-27-303(18)(A). We have held that a parent's illegal-drug use supports a finding of dependency-neglect. *See Tadlock v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 841, 372 S.W.3d 403. In the present case, the parties stipulated at the probable-cause hearing that there was probable cause that the children were dependent-neglected and at a substantial risk of harm as the result of Shanell's past, present, and continued illegal-drug use, and the probable-cause order entered by the trial court was entered based on that stipulation. By dismissing the action sua sponte the following day, the trial court effectively removed any and all safeguards it had set in place for these children. Without some type of enforceable court order, the McKeevers are legal strangers to these endangered children. The only potential safeguard left in place was the trial court's

admonition to DHS, "*If DHS has any reason to believe* that Mr. and Mrs. McKeever have not, *or will not*, act appropriately to ensure the safety of the children, an emergency hold should then be exercised based on DHS placing the children in an unsafe home." How DHS, without an ongoing case and oversight, would have reason to believe that the McKeevers were not acting appropriately is left to speculation. Not only did the dismissal remove the necessary safeguards for the children, the dismissal also effectively denied rehabilitative services that Shanell was entitled to receive. We conclude that the trial court erred when it failed to conduct the scheduled adjudication hearing and take evidence on the issue of whether the children were dependent-neglected and whether the assessments, evaluations and services provided by DHS were effective. Without such evidence, the trial court had no basis on which to determine whether Shanell was unfit, whether the children had been neglected, or whether the children remained at substantial risk of harm. The trial court did not have any evidence regarding the relatives with whom provisional placement had been made and, in fact, had ordered the provisional-placement parents to attend the adjudication hearing because, "I have no idea of anything about these people."

In the trial court's order closing the case, it found that, because the children had been placed in an appropriate relative placement by DHS, there was no proof that the children would be in immediate danger or imminent harm if the trial court vacated its prior orders. However, this finding was misguided. The placement with relatives was only a provisional foster-home placement pending further dependency-neglect proceedings, as opposed to a

SLIP OPINION

permanent-custody disposition by the trial court.[2]  Because there was no custody order in place, the trial court's order closing the case had the effect of returning the children to the legal custody of Shanell without first addressing the need to protect the juveniles from further harm.  The goal of the case was reunification with Shanell with the help of DHS services, and the children's dependency-neglect status was an essential issue for the trial court to resolve.

The present case is readily distinguishable from *Arkansas Department of Human Services v. Jones*, 97 Ark. App. 267, 248 S.W.3d 507 (2007), where we affirmed the trial court's closure of a dependency-neglect proceeding at the conclusion of the probable-cause hearing. In *Jones*, the two-year-old juvenile had resided with his grandparents for nine months before being taken into emergency DHS custody after an incident where the child's mother had left the child unattended and locked in a car.  At the probable-cause hearing, both of the juvenile's parents testified that the grandparents had provided excellent care and that they wanted custody of the child to remain with the grandparents.  The child's grandmother testified that she loved the child and intended to continue to care for him, and an extensive home study was introduced demonstrating that the grandparents' home was safe and highly suitable for placement of the child.  The grandparents asked to be awarded custody, neither parent objected or expressed any interest in reunification, and based on the evidence presented, the trial court awarded permanent custody to the grandparents and closed the case.  By contrast, in the case at bar there was no testimony concerning the relatives with

---

[2] Arkansas Code Annotated section 9-27-335(d) provides that custody of a juvenile may be transferred to a relative only after a home study is submitted to the court in writing and the court determines that the placement is in the best interest of the juvenile.

whom the children had been temporarily placed, there was no home study, there was no request by anyone to award the relatives custody of the children, there was no custody order entered by the trial court, and Shanell was pursuing reunification with her children in accordance with the stated goal of the case and the DHS services that had been ordered by the trial court. Under such circumstances, it was reversible error for the trial court to terminate these dependency-neglect proceedings.

Because the trial court erroneously dismissed the dependency-neglect proceedings, we reverse the trial court's order and reinstate the ex parte order for emergency custody and probable-cause order previously entered by the trial court. We remand the case for further proceedings in conformity with the Arkansas Juvenile Code.

Reversed and remanded.

VIRDEN and BROWN, JJ., agree.

*Jerald A. Sharum*, Office of Chief Counsel, for appellant.

No response.